In re Boteilho Hawaii Enterprises, Inc. Frederick Ehrensmeyer appearing for appellants. Chuck Choi appearing for appellees. All right appellant and would you like to reserve at any time? I would like to reserve six minutes please. All your honors this appeal arises from a trial on a very specific and limited issue and that was whether or not the chapter 11 plan proposed by the creditor I mean the debtor met the best interest of the creditor test under 11 USC 1129 a under that statute there's there is an evidentiary standard there's a burden that's placed upon the debtor the proponent of the plan the burden is an evidentiary burden by a preponderance of evidence and the debtor must show that creditors would not receive more in a liquidation scenario hypothetically speaking of course I mean that that's kind of baked into the into the problem with this in large part is that this is a hypothetical exercise so it doesn't have the laser focus that you would hope that specific fine because you're projecting it is of course but at the same time that hypothesis must be based on evidence it wasn't there was quite a bit of you know just running through the numbers and trying to keep the numbers straight I mean you've got but for liquidation analysis and then judge Ferris's findings from there okay so I first of all I would submit that a liquidation analysis in and of itself is not evidence it it is a hypothesis in order to determine whether or not that liquidation analysis in fact meets the standard now we need evidence now we need testimony and that burden is a prima facie burden that falls on the proponent first only after that burden is met does the burden then shift to the opposing parties to come forth with their own evidence so so what are you saying that judge Ferris did wrong three things your honor for first of all number one judge Ferris made a finding that the liquidation analysis of the dairy assets alone which included the leases excuse me the structures all the livestock the equipment everything combined he said seven hundred thousand dollars that was based on he pointed to the seven hundred thousand dollar figure that was based on a contract that my client entered into in 2020 it still wanted to pursue it still wanted to pursue at the time that the petition what was filed it was our position that that was binding of the still still an enforceable contract that that was the basis of our of our claims in the big component of this so let's break that one down why why is that wrong why does a later offer that was accepted and sought to be in force trumped by a prior appraisal of the leasehold interest which as the testimony indicated seemed to be drawn itself in a very hypothetical manner ignoring the lease and relying upon the zoning but I certainly think all of those are relevant factors and I I don't criticize judge Ferris for his criticism of our expert evaluation what I do criticize him for however is the lack of any competing evidence set forth on a prima facie basis by the debtor in this case but this is what's important at least you know I was breaking it down is that that that's a lot of this case is if your valuations depend upon the separate value of the dairy lease and also the separate valuations of the dairy cows judge Ferris hearing the evidence morphed that into you took your seven thousand dollars which as you indicated wraps up everything the lease the structures and the cows which has a significant impact on his valuation leading him to believe that the the liabilities were clearly in excess of so you indicated all those are relevant why is it clearly erroneous then well it's a question of the circumstances and I believe in the decision in the decision judge Ferris used language I don't remember the exact words but he speculated there's no way that the value would have come up between 2020 and the time of of trial but what what was important and what I believe he overlooked was the circumstances in in 2020 coming out of the worst drought that the dairy had ever experienced and facing the loss of the only dairy processor on the island metal gold was headed for bankruptcy it looked like they were shuttering and in fact that that that was likely going to happen my clients had a unique business proposal where they were gonna produce on their own they were gonna make cheese and different in-house products and so that was all factored in by the time of trial you know this metal gold processing plant had been resurrected out of bankruptcy it was functioning it was paying up a higher price in fact for milk so and yet still having to obtain dip financing to survive in the evidence was what a hundred fifty thousand per month burn rate just to keep the cattle in place well yes right but I'm talking about the the processing plant which is metal gold right you that's that's the to the good part of the lever that that improved in the interim between the appraisal and and that but there's a whole other side which is really what seems like judge Ferris focused on which is these cows are not getting enough the pasture isn't enough for the beef cattle all of this burn rate for the dairy there's nobody else stepping up you know to buy as a dairy which caps the valuation of that asset so you've got the classic there's two sides of this it seems and he picked one you know I again it's speculating whether anyone would would step up to purchase these assets we know that it's not speculating that no one did I mean between the appraisal in 2020 and the hearing there was no other entity that I would like to acquire these assets there was never a real opportunity to do so the place was under contract by the time we were in bankruptcy Bauman said a he had basically engineered a process to use the bankruptcy court to complete essentially a sale a purchase and I will say his attorneys did an excellent job of using the process I don't know that it was what bankruptcy was intended for but but but it's the result nevertheless that gets to your point and it's a very important that you led with I agree hard this is a very limited appeal it is I mean we're only on liquidation and you when you say that in the tone with it you say it I understand that good faith may have been there improper purpose whatever but that's not what's been appealed that's right which is why I'd like to move on to my second point before I run out of time and that's Judge Ferris's speculation about well if we were to liquidate cattle in my experience I believe he used the words in his decision in my experience I think a trustee is going to be required to advance freight costs again this is another issue where there really was no evidence saying one way or the other so he sided with the proponent of the plan who again had the burden they needed to take a position and prove their position we stepped in with conflicting evidence suggesting otherwise point point is there there was no admissible evidence demonstrating that well supporting Judge Ferris's assumption and that's what it was it was an assumption based on the lack of evidence if in fact that was the case where was the witness testimony you know we had some some witness testimony from the debtor about I believe the the value of livestock in Idaho and the cost to ship livestock on an airplane but what we didn't have is any admissible evidence demonstrating that okay cattle cannot be purchased on island delivery taken there and shipped to the mainland like mr. Portillo testified you're into your six minutes and I don't want to cut you off but I do have a question that that's been bothering me and I support if I do want to I appreciate that but the bigger problem that I have is getting back judge Ferris and decided the 700,000 for the dairy the the lease the the structure everything and the cattle and yet the numbers that were run and then used included both evaluation for dairy cows and ranch cows isn't that double counting under judge Ferris's model right you're selling the the dairy for 700,000 and giving at part of that sale you generate seven thousand for the cattle the dairy cattle there as well don't you have to take them out and there's nothing to slaughter then from the dairy side of this like and I believe that that's where I see error in the decision that $700,000 figure right you disagree with that but if that's 700,000 is valid you need to back out the 1,100 dairy cattle there to be slaughtered that's that's true that makes the number that kind of moots really the any error on on the cost doesn't it I mean if you accept the $700,000 figure which understand we don't okay um last point I'd like to the 700,000 was for the dairy assets that's only half of the equation the other half judge Ferris recognized the evidence was thin that's the ranch I'm not gonna say the ranch lease that is the ranch assets again the leases all of the improvements all of the beef livestock and there was substantial testimony by mr. Botelho about how beef livestock are typically marketed and land purchasers who then ship them away that was in the record that is inconsistent with judge Ferris's speculation regarding requiring trustee to advance shipping costs but counsel those are my three points and I I'm sorry counsel if you're if you're right and if there was another way would the difference in the price that you're suggesting that they would have been able to obtain demonstrated that the assets if done a different way liquidated would have generated enough to actually return money to unsecured residents are you talking about a difference of several hundred thousand dollars which in the grand scheme of things wasn't sufficient to overcome the to receive it so I believe that everything when taken in totality there would have been funds left to to pay creditors on this specific issue of the livestock if delivery were taken in Hawaii as opposed to on the mainland what I would suggest and again this is not in evidence but as a practical matter the market value of those cattle would have been reduced by approximately the cost of shipping but that would have been the price paid on the dock in Hawaii but in any event cattle plus equipment plus leases all of this stuff taken in totality taken in total there would have been funds funds left and the record here just isn't sufficient to say that there wouldn't have been nothing thank you destroy thank you the question by judge Gann is frankly on the nose this is a largely I futile exercise on the part of the appellants to try to hit a nut 2.2 million the total admin priority and secure debts that must be paid before on unsecured creditors receive a dollar and that's a very high hurdle the 2.2 million nut will never be reached if this appellate panel agrees with judge Ferris that the value of the dairy lease is not 1.15 million as asserted in a value appraisal that was three years old as of the time of trial there's testimony in the record where the appraiser acknowledges that it's not a liquidation valuation so the evidentiary value of that appraisal was low and judge Ferris correctly disregarded that appraisal similarly the expert for the appellant Gary Genski who ironically introduced bombin Sadeghi the current majority owner of Botello Hawaii Enterprises to mr. case care the principal behind the care parties in 2002 mr. Sadeghi brought mr. care over to the Big Island for mr. Sadeghi's dairy operation they parted ways in 2007 and mr. care the record shows has been trying to purchase the dairy operation since 2015 or 16 the point here is that the dairy lease is not worth 1 million plus and the judge correctly found that and if you look at the dairy assets there's really no dispute regarding the valuation of the equipment keep in mind your honors the ranch lease is just pasture land I've never I've never done a chapter 12 I've never done a farm case judge Gann's colleague judge Collins who I drew in a Guam bankruptcy in a in a call said Chuck if you come to Arizona we have ostrich farm cases well in Hawaii this is my first experience with cattle equipment and cattle the ranch lease similarly has no value or can I back up though because I'm still trying to get clarity as to the valuation aspect and when you mentioned the the FF and E really wasn't disputed very narrow $20,000 and then the cattle isn't when judge Ferris used the $700,000 figure for the dairy do you agree that all of that was wrapped up to that 700,000 that there really was no other valuation to be given for the dairy equipment and the dairy cattle or is that in addition to the 700,000 it was all wrapped up of your honor and it was and it's consistent with with our evidence our liquidation analysis which was backed by declarations from various parties including the debtor pencil did about a hundred thousand for the FF and E we had a range 250 to 500,000 for the leases so if you do some rough math and I understand we're we're lawyers and there's a reason why we're not engineers and scientists if you do the rough math that's a hundred thousand for the FF and E quarter million for the lease I'm up to 350 and then a quarter million or so for the slaughter value of the dairy cattle it's undisputed there is no market in the state of Hawaii for dairy cows for the simple reason that this is the last dairy commercial dairy within the state and so that's why you were talking about the slaughter value only yes yes that's what the testimony was that's what the testimony was and there is plenty of evidence in the record regarding the last or the second to the last commercial dairy in the state of Hawaii which was started by very they invested a tremendous amount of money into the Big Island they ended up liquidating their dairy cattle they shipped a couple thousand over but as the Sodegi declaration and the articles and other evidence show the remaining 1,000 had to be essentially sold given away on the island of Hawaii we only have 2,000 or so cows about a thousand eleven hundred on the dairy side and about eleven hundred on the ranch side if the panel agrees the ranch lease doesn't have a million dollar feed value as claimed by mr. Kansky then really we'll never we didn't have any value from your side on the ranch lease I we just had argument we had in the liquidation a range a range of 250 to 500,000 even if you take that $500,000 high high range we fall way short of the amount necessary to have any proceeds from a hypothetical liquidation reach general unsecured creditors the the argument that that there was no evidence in support of the liquidation analysis I think is just counted by yes your honor so the the appellant is suggesting that that we that we should not have the judge Ferris should not have relied upon the value of the offer because circumstances had substantially changed during the time from the time of the offer until the trial and it appears I think I correct the judge Ferris didn't believe circumstances were better and and I just wondered if you could point what evidence you think the was presented that would have supported that conclusion your honor there's there's evidence in the record regarding annual sales from the better from both the dairy and the ranch operation there is also judges finding that the leases by definition couldn't be worth more because three years had elapsed since the time that mr. Kea and mr. Botello or the Botello family entered into that $700,000 contract for the purchase and there had to be a white knight so to speak come in and offer money to keep the debtor of the debtors facilities operating suggest that things had also deteriorated financially well certainly it if you look at the record it's pretty apparent that this debtor has been in financial distress for the better part of the decade that preceded the purchase and sale contract between Botello Hawaii Enterprises and mr. Chao the the debtor was already years before the petition liable to a mainland feed company to the tune of a half a million dollars the better was not able to sell except to mr. Kea the dairy the dairy mr. Kea needed financing to acquire the dairy there were no offers for the ranch judge Spraker mentioned a burn rate of 150,000 to correct your honor a little bit it's actually 90,000 but the point is it's 90,000 a month and that is after mr. Sadegi put in upwards of two million dollars to keep this business going and I don't think there's any dispute that in a hypothetical chapter 7 liquidation they're not going to be any proceeds of a sale or enough as bankruptcy lawyers call it enough water to reach the general unsecured creditors this is really an appeal that should be and can be or a decision that can be affirmed just by looking at the values of the two pieces because if the panel agrees the leases are not worth two and a half million and agrees with us that it's more likely that it's worth in the room in up to or at most 500,000 then all these other issues are frankly irrelevant the cattle sale costs the you know the the the advance of the freight because the Delta between the debtors position and appellants position on the value of the cattle at liquidation is about 950,000 even if the panel agreed with mr. Genski's analysis of the liquidation value of the cattle which we believe is completely off the mark they fall short of that 2.2 million dollar dot unless the panel judges have any questions I have nothing for you thank you your honors there's this suggestion that showed up in the proposed plan in the proposed liquidation analysis that the leases might be worth between 250,000 and $500,000 we had a trial on that issue and the debtor didn't present a shred of competent evidence with respect to valuation or lack of valuation of those leases and what should have been expected of the debtor would be some kind of evaluation perhaps an expert witness a real estate broker an appraiser someone in the industry who could make an informed decision on the value or lack thereof of these leases and this record is devoid of any of that as defending parties we presented what we had but again the defending party does not have the prima facie burden of proof on this kind of an issue we don't believe that the plaintiff met its prima facie burden the evidence at the end of the day it was inconclusive and we believe that the the chapter 11 plan should have been rejected for the reasons set forth in the brief and the reasons I've argued today we would request that judge Ferris's decision be vacated in the matter remanded all right thank you thank you matter will be submitted thank you
judges: BRAND, SPRAKER, GAN